## MORTGAGE TO CORPORATION WITNESSED BY STOCKHOLDERS.

READ, AS ASSIGNEE FOR THE CREDITORS OF LINDSAY, v. THE TOLEDO LOAN CO.

Decided, May 19, 1903—68 Ohio State, p. 280.

*Execution and Acknowledgment of Mortgage—Section 4106, Revised Statutes—Stockholders in Corporation—As Witnesses Sign Mortgage—Of which Corporation is Grantee—Signatures do not Invalidate Mortgage—Act of Notary Public Ministerial and not Judicial.*

1. A mortgage executed agreeably to the provisions of Section 4106, Revised Statutes of Ohio, and attested and acknowledged as therein provided, is not invalid and can not be impeached, in the absence of fraud and undue advantage, merely because the witnesses who attest the signature of the mortgagor and the notary public taking his acknowledgment are stockholders of, but not otherwise interested in, the corporation named in said mortgage as grantee.

2. In taking and certifying an acknowledgment, as provided in said Section 4106, the act of the notary public or other officer taking and certifying the same is a ministerial and not a judicial act.

Error to the Circuit Court of Lucas County.

This action was originally commenced in the Probate Court of Lucas County, Ohio, by William H. A. Read, as assignee for the benefit of creditors of Cary D. Lindsay, by the filing of a petition in said court, asking for an order to sell certain of the assigned real estate to pay debts. To this proceeding the defendant in error, The Toledo Loan Co., and others, were made parties de-

fendant. The Toledo Loan Co. filed its answer and cross-petition asserting a claim and lien against the property asked to be sold, to the extent of $4,800, by virtue of a certain mortgage held by it, and which it alleged had been duly executed and delivered to it by Cary D. Lindsay, the assignor. To this claim of The Toledo Loan Co., the assignee, plaintiff in error, replied admitting the execution and delivery by his assignor to said loan company of said "pretended mortgage," but denied the validity of said instrument as a mortgage, on the ground and for the reasons as alleged in his reply, that the same was defectively executed and had not been sufficiently and properly acknowledged or witnessed according to law, in that the witnesses to said instrument and the notary public who took the acknowledgment thereof were each stockholders in said The Toledo Loan Co., grantee in said instrument. The instrument in controversy was found and held by the probate court to be a valid mortgage, and the claim and lien of the loan company thereunder was sustained. Upon appeal by the assignee to the court of common pleas, a like finding and judgment was made and entered by that court. Thereupon the case was taken on error by the assignee to the Circuit Court of Lucas County, where the judgment of said court of common pleas was affirmed. To reverse this judgment of affirmance, the present proceeding in error is prosecuted.

*W. H. A. Read,* for plaintiff in error.

*King & Tracy,* for defendant in error.

CREW, J.; BURKET, C. J., SPEAR, DAVIS, SHAUCK and PRICE, JJ., concur.

On the trial of this cause in the court of common pleas, at the request of the plaintiff, the court made and stated its finding of facts separate from its conclusions of law; and the facts so found and stated by said court of common pleas are admitted to be correct, and they are not here in dispute. The sole controversy in this case arises upon the statement of facts contained in paragraphs four and five of its findings of fact so made by said court of common pleas. Said paragraphs are as follows:

"4. That prior to and upon February 19, 1896, said assignor, Cary D. Lindsay, was a member of said The Toledo Loan Co., and on said date subscribed for ten shares of the capital stock of said company; that thereupon, on the representation of said Cary D.

Lindsay to said company, and upon agreement betweeen said Cary Lindsay and said company, that said loan should become and be secured by a first lien upon said lots numbers 116 and 117 in Shaw's Monroe Street Addition to Toledo, Ohio, said The Toledo Loan Co., on February 19, 1896, loaned and advanced to said Cary D. Lindsay the sum of forty-eight hundred dollars ($4,800), of and from the moneys theretofore raised by said company for said purpose of loaning to its members, said Cary D. Lindsay agreeing to repay said loan with interest, in weekly installments, in accordance with the constitution and by-laws of said company; that in pursuance of said representations and agreement, and to secure the payment of said money so loaned, with interest, and simultaneously with the loaning thereof, said Cary D. Lindsay executed, acknowledged and delivered to said defendant, The Toledo Loan Co., his certain mortgage for said sum of $4,800 upon said lots numbers 116 and 117 in Shaw's Monroe Street Addition, aforesaid.

"5.   That said mortgage was executed by said Cary D. Lindsay in the presence of Eva M. Ely and Grant Williams, and was acknowledged by said Cary D. Lindsay before Grant Williams, a notary public within and for Lucas county, Ohio; that at the time of the execution and acknowledgement of said mortgage, said Cary D. Lindsay was a stockholder in said The Toledo Loan Co., and Eva M. Ely and Grant Williams were not otherwise related to said The Toledo Loan Co., or in any wise employed by it; and said Cary D. Lindsay then knew that said witnesses and notary, respectively, were stockholders in said company."

Upon the foregoing facts, it is claimed by plaintiff in error:

"First—That inasmuch as Eva M. Ely and Grant Williams were both stockholders of the defendant company, the mortgage given to it by Cary D. Lindsay was never witnessed.

"Second—That inasmuch as Grant Williams, the notary before whom said mortgage purports to have been acknowledged by Cary D. Lindsay, was a stockholder in said company, that said mortgage was never duly acknowledged.

"Third—That never having been acknowledged and never having been witnessed as to its signature, said mortgage was not entitled to record in Lucas County, and the recording of the same was a nullity.

"Fourth—That the plaintiff as assignee holds the legal title to said real estate free from all incumbrances or liens growing out of said mortgage."

It will thus be seen that the question here presented is: Whether a mortgage made to a corporation as grantee is invalid and of no effect by reason of the fact that the witnesses to such mortgage

and the officer taking the acknowledgement thereof are stock-
holders in said corporation. The requisites as to the manner and
form of the execution of instruments for the conveyance or in-
cumbrance of real property is matter of statutory regulation, and
the statute providing for and governing the execution and ac-
knowledgement of deeds, mortgages, etc., in this state, is Section
4106, Revised Statutes, which section, so far as it has relation
to the present inquiry, and application to the question here in-
volved, provides as follows:

"A  *  *  *  mortgage  *  *  *  of any estate or interest in
real property shall be signed by the mortgagor  *  *  *  and
such signing shall be acknowledged by the  *  *  *  mortgagor
*  *  *  in the presence of two witnesses, who shall attest the
signing and subscribe their names to the attestation, and such
signing shall also be acknowledged by the  *  *  *  mortgagor
*  *  *  before a judge of a court of record in this state, or a clerk
thereof, a county auditor, county surveyor, notary public, mayor
or justice of the peace, who shall certify the acknowledgement on
the same sheet on which the instrument is written or printed, and
subscribe his name thereto."

It will be observed that within the provisions of this section the
only requirements are that the mortgage shall be signed by the
mortgagor, that such signing shall be acknowledged by him in the
presence of two witnesses who shall attest the same, and that such
signing shall be acknowledged by the mortgagor before one of the
several officers therein named, whose duty it shall be to make
certificate thereon of said acknowledgement. But the qualifica-
tions of the witnesses so attesting, and the officer so certifying, are
not attempted to be prescribed by said section, nor is there in said
statute any provision or even suggestion that a witness or officer
shall be disqualified or rendered incompetent as such, by reason of
being interested in the conveyance so witnessed and certified. In
the absence then of any express provision in the statute forbidding
it, the precise question here presented is, whether a stockholder in
a corporation, not otherwise interested therein, may be a witness
to, and as notary public may take the acknowledgement of a mort-
gage executed by another to such corporation; and the proper de-
termination of this inquiry involves, to some extent at least, a con-
sideration both of the purpose of the legislation requiring the ob-
servance of these formalities in the execution of a mortgage, and
also of the capacity in which a notary acts in taking and certifying

the acknowledgement of the grantor, whether such act on his part is judicial or ministerial in character. At common law attestation was not necessary to the validity of a deed or mortgage and is not now necessary, except when required by statute. The purpose of the Legislature in requiring that an instrument for the conveyance or incumbrance of real property shall be witnessed by two witnesses doubtless was that there might be on record, in a matter so important as that of the conveyance or incumbrance of real property, the names of two persons who certify or attest the fact, that they saw the grantor sign the instrument or heard him acknowledge the same, and thereby to furnish an easy and effectual mode of proof of its execution, and thus to provide an additional protection or security against the making of a fraudulent or forged conveyance or incumbrance. The certificate of acknowledgement by a notary public, or other authorized officer, is simply an additional solemnity in the execution of a deed or mortgage and is required by statute chiefly for the purpose of affording proof of the due execution of the instrument by the grantor, sufficient to authorize the recorder to make the same matter of public record. Section 4134, Revised Statutes.

Jones on the Law of Real Property in Conveyancing, at Section 1126, in discussing the subject of "acknowledgement" says:

"The chief use of an acknowledgement, as already noticed, is to perfect the deed for record. The grantor can select such authorized officer before whom to acknowledge his deed as he chooses. He may refuse to make his acknowledement before an interested officer. Having voluntarily acknowledged the deed, the grantor is presumed to have voluntarily consented to its record. If his deed is found on record, apparently executed according to the forms of law, and without any circumstances of suspicion against it, the plainest principle of equity would hold him estopped from setting up an undisclosed interest of the officer before whom he made his acknowledgement, to defeat his conveyance, as against an innocent purchaser relying upon the record as the evidence of his title.' * * *

"An interest under a deed not apparent on its face does not disqualify an officer to take and certify an ordinary acknowledgement. Thus, if he is one of the beneficiaries in a deed of trust, he may take the grantor's acknowledgement, when his interest under the deed does not appear on the face of it. The fact that he acted as the agent of the mortgagor in obtaining the money does not disqualify him to take the mortgagor's acknowledgement."

What is here said by the author would seem to apply equally as well to the witnesses attesting the signature of the grantor as to the officer taking his acknowledgement. In an early case in this state, that of *Johnson v. Turner,* 7 Ohio (pt. 2), 216, it was decided by this court that a witness to a trust deed, given to secure an indebtedness to a bank, who at the time of the execution of such deed was a stockholder in said bank, was not thereby disqualified to act as a subscribing witness to said deed, and that such deed was not thereby rendered invalid nor could it, on that ground, be impeached for want of sufficient attestation. The question there decided arose and was presented on the following agreed statement of facts:

"Walter Turner was indebted to the Bank of Zanesville in the amount stated in the trust deed under which the plaintiffs claimed, and on the application of C. B. Goddard, Esq., the attorney for the bank, executed the deed which was prepared and signed by said Goddard, as one of the subscribing witnesses, he (Goddard) being a stockholder in the corporation."

In the opinion in that case the court say:

"The first question for the consideration of the court is the objection to the trust deed, because, at the time of its execution, General Goddard, one of the subscribing witnesses, was a stockholder in the Bank of Zanesville. If this objection is sustainable, the deed is invalid to pass the legal title of the lands intended to be conveyed to the trustee for the security of the bank, and ought not to be received in evidence in support of a legal title in the plaintiff's lessors.    *    *    *

"But is not this deed in conformity with the statute? This is admitted, in all respects, excepting that General Goddard was interested in the corporation for whose benefit it was made, when he subscribed it as a witness, and it was executed by Turner.    *    *    *

"In England the grantee must prepare the conveyance and present it to the grantor for execution. We know of no such rule here. The grantor prepares his own deed. He calls his witnesses; they are selected by himself. He must then acknowledge its execution, and not until thus acknowledged, does he part with its possession by a delivery to the grantee. Every act, therefore, is the act of the grantor while the deed remains in his possession, and the first act of the grantee is the acceptance when finally delivered to him. The grantor, then, should not, it appears to us, be permitted to object to a witness selected by himself, and in whose integrity he had reposed confidence, to bear witness to his own acts. But aside from this course of reasoning, is this deed invalid? The statute, Vol. XXXI, 346, Section 1, requires the deed to be executed 'in

the presence of two witnesses, who shall attest such signing and sealing and subscribe their names to such attestation.' Unless the express provisions of this statute or its plain inference lead to the conclusion that the witnesses to a deed must be credible and competent to prove its execution at the time of their attestation, and that such was the intention of the Legislature, reluctantly indeed would this court adopt such an opinion. If such be the law, it is time to look around us and ascertain by whom our deeds bear witness."

As above stated, the court in this case held that the trust deed was sufficiently attested, was valid and could not be impeached by showing that Goddard, one of the attesting witnesses, was interested in the corporation. But, it is here insisted, by counsel for plaintiff in error, that the doctrine of this case is modified and the authority of the case destroyed by the decision of this court in the later case of *Amick* v. *Woodworth et al,* 58 Ohio St., 86, where it is held by this court that the grantee in an instrument for the conveyance or incumbrance of real property is disqualified to be an attesting witness to its execution or to act in an official character in taking and certifying the acknowledgement of the grantor. In the case of *Amick* v. *Woodworth* the instrument, the validity of which was in controversy, was acknowledged before, and was witnessed by, the person named therein as *grantee,* which fact readily distinguishes it from the case we are here considering. And that this distinction was not overlooked, but was clearly recognized by the court, affirmatively appears from the language of Williams, J., who prepared the opinion in that case, when he says: "It is probably unnecessary to notice that this question was not involved in *Johnson* v. *Turner,* 7 Ohio (pt. 2), 216, and that case is unaffected."

The decision in *Johnson* v. *Turner* having been made by this court as early as the December Term, 1836, and not having since been questioned or overruled by this court, has become a law of property in this state, and for that reason, if for no other, should now be followed and upheld. This decision in *Johnson* v. *Turner* must, therefore, be held to conclusively determine the question in this state that an instrument, conveying or incumbering real estate can not be impeached and will not be held invalid on the sole ground that the witnesses to such instrument are interested to the extent of being stockholders in the corporation named therein as grantee.

This leaves then only the question: Is the mortgage here in controversy invalid, because the notary public before whom the same was acknowledged was at the time of taking such acknowledgement a stockholder in The Toledo Loan Co., grantee in said mortgage? Counsel in this case upon both sides, as evidenced by their briefs, have been diligent in the collection and citation of authorities dealing with this question, and the cases cited show quite a conflict of authority and diversity of holding by the courts in the different states upon this question. There would seem to be two lines of authorities upon this proposition, the one holding that the act of a notary in taking and certifying an acknowledgement is a judicial act, the other holding it to be ministerial only. In those states holding the former doctrine, the notary is held to be incompetent and the instrument therefore invalid. While in those states holding the latter doctrine, exactly the contrary decision is reached, and in most of the authorities cited by counsel the decision in each particular case seems to have turned upon or been controlled by the fact of whether the court rendering the decision regarded the act of the officer in taking the acknowledgement as judicial or ministerial in character. This distinction is noticed and discussed in the case of *Bank* v. *Conway*, 17 Fed. Cases, 1202. Judge Hughes, announcing the opinion of the U. S. District Court in that case, among other things, says:

"The question whether this writing was properly acknowledged or not, which was so ably and elaborately argued at bar, is only a secondary one in the case. The primary question is, when did this writing become a deed as between the grantor and grantee? The acknowledgement of the writing by the grantor had reference only to its being recorded, and thereby made valid as against his creditors. If the question were only as to acknowledgement, I should decide, without hesitation, that it was properly acknowledged; for the teaching of the cases cited at bar seems to me plainly to be, that an interested person may take the acknowledgement of a deed when the act is merely ministerial; although if the act be judicial, such as taking the acknowledgement, after privy examination, of a married woman, an interested person can not take it. *Harkins* v. *Forsyth*, 11 Leigh, 294; *Carper* v. *McDowell*, 5 Gratt., 212; *Horseley* v. *Garth*, 2 Gratt., 471; *Taliaferro* v. *Pryor*, 12 Gratt., 277; *Johnston* v. *Slater*, 11 Gratt., 321; *Turner* v. *Stip*, 1 Wash., 319; *Hampton* v. *Stevens*, 10 Am. L. Reg., 107 (1871); *Boswell* v. *Flockheart*, 8 Leigh, 364; *Dimes* v. *Grand Junction Canal Co.*, 16 Eng. Law & Eq., 63.

This case was taken on appeal to the United States Circuit Court, and in that court Chief Justice Waite, announcing the opinion, said:

"A deed may be acknowledged by the grantor before a notary public, and upon the certificate of the notary to that effect in proper form, recorded. The form of the certificate in this case is correct, but it is insisted that because Garnett, the notary, was interested as one of the beneficiaries in the trust, he was incompetent in law to receive and certify the acknowledgement. This presents the principal question in the case for our consideration.

"It has been frequently decided that an acknowledgement before a grantee named in a deed was of no effect. *Beaman* v. *Whitney,* 20 Me., 413; *Wilson* v. *Traer,* 20 Ia., 231; *Stevens* v. *Hampton,* 46 Mo., 404; *Groesbeck* v. *Seeley,* 13 Mich., 329. It has also been held that a party interested in a deed can not take and certify the acknowledgement of a married woman requiring a privy examination. *Withers* v. *Baird,* 7 Watts, 228. The taking of such an acknowledgement is, in some respects, a judicial act, and not ministerial only, but in the case of an ordinary acknowledgement it is purely a ministerial act. *Truman* v. *Lore,* 14 Ohio St., 151; *Lynch* v. *Livingston,* 2 Seld., 434. Upon this principle it was decided in *Dussaume* v. *Burnett,* 5 Ia., 95, that an acknowledgement before one not a grantee named in the deed, but interested in the conveyance, was good. The same distinction was recognized in *Stevens* v. *Hampton,* before cited." * * *

And further in the same opinion it is said: "A certificate of acknowledgement is required to perfect a deed for record. The grantor can select such authorized officer for that purpose as he chooses. He has full power to protect himself against frauds by interested parties as certifying officers, for he may refuse to make his acknowledgement before them." And in this case it was held that the notary taking the acknowledgement was not disqualified, and that the deed was valid.

It has been twice held by the Supreme Court of this state that in Ohio the officer does not exercise judicial functions in taking an acknowledgement, and that his act, though official, is purely ministerial. *Truman* v. *Lore et al,* 14 Ohio St., 151; *Williamson* v. *Carskadden,* 36 Ohio St., 664. And that the Legislature in the enactment of the present statute so regarded it, is, we think, clearly indicated by the fact that the power to take acknowledgements is not limited by the statute to judicial officers alone, such as the judge of a court of record, mayor, or justice of the peace, but is conferred as well upon county auditors, county surveyors, and

notaries public.  It would seem that in those instances where the Legislature intended to disqualify, or limit the authority of a notary public to act in his official capacity, it has done so by express and positive statutory provision; for instance by Section 111, Revised Statutes, it is provided: "No banker, broker, cashier, director, teller, or clerk of any bank, or broker or other person holding any official relation to any bank, banker, or broker; shall be competent to act as notary public in any matter to which said bank, banker, or broker is in any way interested."

By Section 5269, Revised Statutes, a notary public is one of the officers authorized to take depositions, but it is provided by Section 5271 that such notary public must not be a relative or attorney of either party or otherwise interested in the event of the action or proceeding in which the deposition is taken.  If, therefore, it had been the policy and purpose of the Legislature to prohibit a stockholder of a corporation from acting as notary public in the taking and certifying of an acknowledgement to an instrument in which such corporation was interested, it would doubtless have so provided in Section 4106, and in the absence of any statutory inhibition the disqualification of the notary to act will not be presumed.

In the case at bar it is admitted that Cary D. Lindsay, the assignor, at the time he acknowledged this mortgage, knew of the relation the notary, Grant Williams, sustained to The Toledo Loan Co., and knew that he was then the holder of two shares of stock in said company, and there is in this case no imputation or charge of improper conduct or bad faith or undue advantage arising out of such interest or relationship, nor is there any claim but that the acknowledgement was freely and fairly made in the honest belief that it was in all respects authorized and sufficient.  To hold then, under such circumstances, that the mortgage here in controversy was invalid, unless impelled thereto by statutory requirement or the plainest considerations of public policy, would, it seems to us, be a subversion of justice and would be contrary to the plainest principles of equity and fair dealing.  In affirming the judgment of the court of common pleas in this case the circuit court was right, and its judgment is

*Affirmed.*